## HUPPER v. UNITED STATES.

District Court, S. D. New York. September 15, 1927.

**Bankruptcy ⚖═290—Trustee not debarred from recovering full damages for breach of contract because, owing to the bankruptcy, a liability over may not be paid in full.**

Trustee of a bankrupt is not debarred from recovering full damages for breach of a contract, in direct consequence of which bankrupt incurred liability to another, because, owing to the bankruptcy, such other may not realize its claim in full.

In Admiralty. Suit by Roscoe H. Hupper, trustee in bankruptcy of the Cuban Atlantic Transport Corporation, against the United States. On exceptions to report of commissioner. Report confirmed.

Kirlin, Woolsey, Campbell, Hickox & Keating, of New York City, for libelant.

Charles H. Tuttle, U. S. Atty., of New York City (Arthur H. Longfellow, Sp. Asst. U. S. Atty., of New York City, of counsel), for the United States.

MACK, Circuit Judge. Exceptions by both parties to the commissioner's report as to damages after interlocutory decree of liability against respondent for breach of its charters to the bankrupt of tugs Cleopatra, Barrenfork, and Bathalum.

In 1919 bankrupt began the business of transporting coal in barges towed by oceangoing tugs from Southern ports of the United States to Cuba. On October 1, 1919, it had contracts for the transport of at least 12,000 tons during each of the months of October and November, and expected to make additional informal contracts with one of its chief stockholders, a coal company. It had under charter on that day 14 barges, the 3 tugs above named, and the tug Ballenas. Of these, each of the three other than the Cleopatra was chartered for a single trip, which trip, in the case of the Ballenas, was in the course of completion. The Cleopatra, under a time charter expiring October 8, ended a trip on October 3. The parties entered into

a new agreement with respect to the Cleopatra, and also arranged to continue the hire of the Ballenas during the period here in question.

Between October 1 and November 22 the engineers of ocean-going tugs were out on strike against all such vessels not provided with a second assistant engineer. The strike was effective in tying up ocean towing. The United States refused to provide or to allow the charterers to provide a third engineer on any of the tugs which it owned. In consequence, the Barrenfork and the Bathalum were kept inactive during the whole period of the strike. The Cleopatra succeeded in making one trip, beginning October 15 and ending November 5. This was effectuated by reason of a secret agreement, made without respondent's knowledge by bankrupt's president, and the Cleopatra's two engineers, under which the latter were given the wages of another engineer, to be expended as they chose. Respondent prohibited a second trip by the tug under a similar arrangement. The Ballenas was not interfered with by the strike; she made two trips.

On October 19 bankrupt chartered a Canadian tug, the Murray Stewart. The good offices of the head of respondent's tug and barge department were availed of in order to secure a coastwise trading license for this foreign vessel. The Murray Stewart left November 13 for Cuba, towing three barges loaded with over 8,000 tons. She broke down after proceeding a short distance, and was forced to put back for repairs that were not completed until the strike period had ended. There was expert testimony at the hearing that ocean-going tugs could not safely be made to tow more than two barges on such a voyage.

The commissioner has awarded damages of $73,042. This is based on a finding that three tugs were each prevented from making one trip, that the net profits from these trips would have been $32,910, and that the bankrupt was forced to expend $34,560 unearned barge hire. The remaining $5,572 represents the amount of demurrage paid by one of the shippers over bankrupt's route for a delay in unloading coal from railroad cars at tidewater, because of the impossibility of towing the coal away. A claim for this amount has been filed by the shipper against the bankrupt's estate.

Respondent bases a denial of substantial damages resulting from its breach upon its contention that bankrupt was furnished by it with substituted vessels solely to make the trips prevented by the strikes; that is, that

the agreements permitting the use of the Cleopatra after October 8, the Ballenas during the strike period, and the Canadian vessel, gave, or, but for bankrupt's own negligence in putting too heavy a tow on the Murray Stewart, would have given, the charterer all the trips to which it was entitled. In the alternative, respondent contends that bankrupt moved all tonnage contracted for, except such as was held up by its own negligence. The demurrage claim is contested on the ground that the shipper's claim therefor has not been paid, and, because of the bankruptcy, will not be paid in full by the libelant; further that, if recovery is allowed for three trips, it would be duplication to allow a demurrage claim for coal that would have been carried on one of those trips.

Libelant, denying this interpretation of the arrangements made, excepts to the refusal of the commissioner to find that the Cleopatra might have made an additional trip, but for the strike, and to allow damages therefor. That the Barrenfork and Bathalum were prevented from making this one trip as per charter because of the strike is clear.

Respondent paid off hire for the Cleopatra between October 3 and 15; it is clear, too, that her officers at first refused to sail, and that thereby several days were lost before the arrangement as to a third engineer was reached. Further, the failure to make a trip after November 5 was due to respondent's refusal to permit a similar arrangement therefor. The total of the two periods of delay, October 3 to 15 and November 5 to 22, was sufficient for one trip of 24 days, but not for two. In other words, but for the breach, the Cleopatra could have begun the October 15 trip shortly after the 3, and on its conclusion have made one additional trip before November 22.

Though the Ballenas towed from a port other than the one from which the Bathalum would have departed, it doubtless performed some of the latter's work. That in itself, however, cannot mitigate the damages, for bankrupt had barges for more than four tugs, and, though its firm contracts for coal delivery would have required the use of all of them, it is clear from the record that, if it had been ready to move coal, it could have found employment for four tugs, despite the coal strike on October 30. Export to Cuba was not forbidden by the coal commission until after December.

If, when the Ballenas was rechartered or the Cleopatra charter extended, it had been agreed that this was solely done to provide a substitute, respondent's contentions in this respect would be upheld. There was, however, no such express agreement, and there is no substantial basis for implying one. Rechartering immediately on expiration of an old charter was testified to have been the general practice of the parties. Furthermore, respondent at the time did not admit breach or liability therefor because of the strike; in these circumstances, it cannot be deemed to have intended to give substituted service.

While there is evidence that respondent's agents understood that the Canadian boat was to be used "to make the loss, whoever bore it, as little as possible," the tug itself, unlike the others, was not respondent's property; one set of respondent's officials merely induced another set to issue the necessary license to enable a Canadian vessel to engage in this trade. This license was not conditioned, as it might have been, upon acceptance of the tug as a substitute for a chartered one.

Moreover, it is not clear, under all the conditions then prevailing, with the utter impossibility of getting tugs, unless respondent changed its attitude, that bankrupt can be deemed negligent in endeavoring to have three barges towed. It was taking a risk, in order to meet the situation of emergency created by respondent's attitude.

As to the demurrage element in the damages, the allowance thereof, if otherwise proper, does not in any way give libelant double damages. Bankrupt was entitled to compensation, not only for the loss of transportation profits, but also for the liability incurred because of the demurrage. Both are proximately due to respondent's breach. Respondent's further objection that bankrupt has not paid and will not pay the demurrage claim in full is not decisive. Liability, with consequent obligation to pay in full, was incurred; conceivably bankrupt will recognize the obligation, notwithstanding bankruptcy or a discharge therein. In Sibley v. Nason, 196 Mass. 125, 81 N. E. 887, 12 L. R. A. (N. S.) 1173, 124 Am. St. Rep. 520, 12 Ann. Cas. 938 (see, too, Denver & R. G. R. R. v. Lorentzen [C. C. A.] 79 F. 291, 294), unpaid doctor's bills, discharged in bankruptcy, were held recoverable as an element of damages in an action against a tort-feasor. Respondent's exceptions are therefore overruled.

As it seems clear, from the facts above stated, that the Cleopatra could not during the period in question have made two voyages in addition to the one actually made, libelant's exceptions are likewise overruled. The commissioner's report is confirmed.